UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. |
| v. | ) |
| | ) 18 U.S.C. § 1343 |
| MORRELL STEVEN NEELY | ) |
| | ) |

## INDICTMENT

THE GRAND JURY CHARGES:

At times material to this Indictment:

### Background

1. MORELL STEVEN NEELY (a/k/a Steve Neely) was a resident of Chicago, Illinois. NEELY owned Noil Petroleum Corporation and Noil Corp. (collectively, "NOIL"), which were Illinois corporations purportedly involved in distribution of "diesel and gasoline fuel services to all parts of the country." NOIL's primary place of business was in Chicago, Illinois.

2. Company A was a corporation headquartered in Hobart, Indiana. Among other things, Company A distributed wholesale petroleum fuels in various states, including Indiana and Illinois.

3. Company B was a limited liability company headquartered in Houston, Texas. Among other things, Company B distributed wholesale

1

petroleum fuels in various states, including Texas.

4. Company C was a limited liability company headquartered in Houston, Texas. Among other things, Company C acted as a "jobber" or intermediary in the petroleum fuels market by purchasing from wholesalers and selling to retailers.

## SCHEME TO DEFRAUD

5. Beginning in or about October 2017 and continuing until at least in or about June 2020, in the Northern District of Indiana and elsewhere, **MORELL STEVEN NEELY**, defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud suppliers and customers in the petroleum fuels industry.

## PURPOSE OF THE SCHEME

6. The purpose of the scheme was to fraudulently obtain money and property from suppliers and customers in the petroleum fuels industry by means of materially false and fraudulent pretenses, representations, and promises relating to NOIL's financial condition and ability to supply products, and by concealment of material facts relating to the same.

## MANNER AND MEANS

### Fraud Against Company A

7. In or about July 2018, NEELY, acting on behalf of NOIL, applied

for a line of credit to purchase fuel from Company A. NEELY failed to complete the application at that time.

8. In or about May 2019, a representative of Company A located in the Northern District of Indiana contacted NEELY, who indicated that he was still interested in doing business with Company A.

9. Between in or about May 2019 and in or about March 2020, NEELY communicated with Company A in support of a renewed application for credit. In or about February 2020, NEELY submitted materially false and fraudulent documents to Company A in support of the renewed application, including: (a) fraudulent bank balance verifications that falsely stated the existence of active accounts and the availability of funds in those accounts and (b) fraudulent letters of reference from petroleum fuel suppliers purporting to vouch for NOIL's credit-worthiness and good standing with the suppliers.

10. As part of the renewed application, NEELY authorized Company A to make automatic drafts from one of NOIL's business checking accounts at Chase Bank (the "x0889 Account") within seven days of being invoiced for any purchase made using the line of credit. NEELY did not disclose that the x0889 Account had insufficient funds to satisfy NOIL's obligations to Company A.

11. On or about March 10, 2020, Company A approved the renewed application referenced in Paragraph 9 in the amount of $200,000 and informed

3

NEELY of the approval on the same day. In making its approval decision, Company A relied on the fraudulent documents referenced in Paragraph 9, and on other false and fraudulent statements by NEELY.

12. From on or about March 12, 2020 to on or about March 17, 2020, NEELY, acting through NOIL, caused approximately 100,000 gallons of gasoline belonging to Company A to be withdrawn from a facility in Lemont, Illinois. According to invoices issued to NOIL by Company A, the total cost of the gasoline withdrawn during this period was approximately $105,000, with additional state and local taxes of approximately $50,000.

13. From on or about March 12 to on or about March 18, 2020, NEELY caused NOIL to sell the gasoline referenced in Paragraph 12 to an unrelated third party for approximately $99,000. From on or about March 16, 2020 to on or about March 24, 2020, the unrelated third party paid NOIL via ACH transfers to NOIL's business checking account at BMO Harris Bank (the "x4037 Account"). NEELY did not make any of these funds available for payment to Company A via the x0889 Account or otherwise.

14. On or about March 24, 2020, pursuant to the terms of line of credit referenced in Paragraph 12, an employee of Company A, while present in the Northern District of Indiana, attempted to initiate an ACH draft from the x0889 Account, which was rejected for insufficient funds. This attempted ACH

4

draft resulted in an interstate wire communication.

**Fraud Against Company B**

15. In or about July 2018, NEELY, acting on behalf of NOIL, applied for a $2 million line of credit to purchase fuel from Company B.

16. In or about July 2018, NEELY submitted materially false and fraudulent documents to Company B in support of the application referenced in Paragraph 15. This included fraudulent letters of reference from petroleum fuel suppliers purporting to vouch for NOIL's credit-worthiness and good standing with the suppliers. NEELY also falsely answered "no" in response to a question on the application asking whether "the Company, its Partners or Members ever claimed bankruptcy[.]" In fact, NEELY filed for personal bankruptcy in 1987, 1989, and 2005.

17. In or about July 2018, Company B contacted one of the companies that purportedly provided one of the letters referenced in Paragraph 16. Company B determined that the letter of reference had been materially altered and did not reflect NOIL's then-current status.

18. In or about July 2018, Company B rejected the application referenced in Paragraph 15.

**Fraud Against Company C**

19. In or about October 2017, NEELY caused NOIL to enter into a fuel

5

supply contract with Company C.

20. In or about November 2017, NEELY caused NOIL to enter into a separate fuel escrow agreement with Company C. Under the terms of the fuel escrow agreement, NEELY falsely represented that NOIL would only use the funds deposited by Company C if Company C failed to pay under the terms of the fuel supply contract referenced in Paragraph 19.

21. In or about December 2017, Company C transferred $300,000 to the x0889 Account pursuant to the fuel escrow agreement. Contrary to his prior representations, that same month, in December 2017, NEELY misused those funds by spending them on personal matters, including a payment of more than $100,000 to the landlord of his personal residence.

22. In or about May 2018, Company C transferred an additional $300,000 to the x0899 Account pursuant to the fuel escrow agreement. Despite his prior representations, on or about the same day these funds were received, NEELY misused those funds to pay one of NOIL's suppliers.

23. In or about June 2018, Company C cancelled the fuel supply contract, alleging that NOIL failed to deliver product as agreed. As a result of NEELY's fraudulent misrepresentations and subsequent actions, Company C incurred a loss of approximately $600,000.

## COUNTS ONE THROUGH THREE

(Wire Fraud)

24. On or about the dates listed below, within the Northern District of Indiana and elsewhere, defendant

**MORRELL STEVEN NEELY**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communications in interstate commerce the signals and sounds described below for each count.

| COUNT | ON OR ABOUT DATE | WIRE COMMUNICATION |
|---|---|---|
| 1 | March 24, 2020 | Attempted ACH Draft of the x0889 Account controlled by NEELY |
| 2 | July 18, 2018 | Email to Company B attaching two false letters of reference for NOIL from petroleum fuel suppliers |
| 3 | May 3, 2018 | Wire Transfer of $300,000 from Allegiance Bank Account x5723 controlled by Company C to the x0889 Account controlled by NEELY |

All in violation of Title 18, United States Code, Section 1343.

# FORFEITURE ALLEGATIONS

1. The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(3)(F) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, set forth in this Indictment, the defendant, **MORRELL STEVEN NEELY** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(3)(F) and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

3. The United States will also seek a forfeiture money judgment equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

4. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28 United States Code, Section 2461(c).

                                        A TRUE BILL:

                                          */s/Foreperson*
                                          FOREPERSON

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY


By:   */s/Francis Sohn*
      Francis Sohn
      Assistant United States Attorney
      Northern District of Indiana