<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF INDIANA
 2                          HAMMOND DIVISION

 3   UNITED STATES OF AMERICA,      )
                                    )
 4   vs.                            )   2:23-CR-131
                                    )
 5   MORRELL STEVEN NEELY,          )
                                    )
 6        Defendant.                )

 7

                     TRANSCRIPT OF BOND REVOCATION HEARING
 8                        December 6, 2024
             BEFORE THE HONORABLE ANDREW P. RODOVICH
 9                UNITED STATES DISTRICT MAGISTRATE

10

11   A P P E A R A N C E S:

12   FOR THE GOVERNMENT:

13                            Francis Sohn
                              United States Attorney's Office
14                            5400 Federal Plaza, Suite 1500
                              Hammond, Indiana  46320
15                            (219) 937-5500

16   FOR THE DEFENDANT:

17                            Patrick W. Young
                              Attorney at Law
18                            4231 Broadway
                              Gary, Indiana  46409
19                            (219) 884-2388

20   ALSO PRESENT:           Jazmyn Harmon-Whitlow, U.S. Probation

21

22

23

24

25
</pre>

1          (The following is a transcript of proceedings produced

2          from the FTR audio recording:)

3               **DEPUTY CLERK:**  All rise.  Court is now in session.

4     The Honorable Andrew Rodovich presiding.

5               **THE COURT:**  Please be seated.

6          We're proceeding under Cause Number 2:23-CR-131, entitled

7     United States of America versus Morrell Steven Neely.  Show the

8     government is represented by Frank Sohn, Assistant U.S.

9     Attorney.  The defendant is present with his attorney,

10    Patrick Young.  And we are here on the government's motion to

11    revoke the defendant's bond.

12         The other day, Wednesday, I heard the testimony of the

13    doctor.  Does the government have any other evidence or

14    proffers?

15              **MR. SOHN:**  Yes, Your Honor, by way of proffer.

16         I believe Your Honor also has the lease application that

17    Mr. Neely filed.  In addition to that --

18              **THE COURT:**  That was admitted as Government's

19    Exhibit 1?

20              **MR. SOHN:**  Yes, Your Honor, it was.

21         In addition to that, Your Honor, there were a couple

22    attachments to that lease application.  Those are -- I'll mark

23    as Government's Exhibit 2 and 3.  That is a driver's license

24    and a Social Security card belonging to Mr. Neely, which have

25    been previously provided to defense counsel and which we're

1  happy to provide to the Court if the Court would like.

2        **THE COURT:** All right. Show Government's Exhibits 2

3  and 3 admitted. You can leave them with the courtroom deputy.

4     Any other evidence or proffers?

5        **MR. SOHN:** Yes, Your Honor.

6     Your Honor, as the Court heard on Wednesday from the

7  landlord -- by way of proffer, Your Honor, Mr. Neely answered

8  two questions on his lease application, one indicating that he

9  had never filed for bankruptcy. The answer to that question

10  when he said, "No," was false; and I believe, Your Honor, it

11  was false based on a number of bankruptcy -- personal

12  bankruptcy applications Mr. Neely has filed over the years.

13     Your Honor, going back as far as 1987, Mr. Neely filed for

14  bankruptcy in the Northern District of Illinois. In 2005, he

15  filed for bankruptcy in the Central District of California; in

16  2009, he also filed for bankruptcy in the Central District of

17  California. In fact, in 2009, he filed for bankruptcy in the

18  Central District of California twice. He filed again in the

19  Central District of California in 2010; he filed again in the

20  Central District of California in 2012; and then he

21  subsequently filed twice in 2019 in the Northern District of

22  Illinois.

23     And, Your Honor, the reason for the multiple filings in

24  certain years was certain ones were Chapter 7, 11, and 13. He

25  may have filed multiple ones.

1    Your Honor, with respect to the question that indicated

2    with Mr. Neely -- to Mr. Neely's answer of whether he has ever

3    been asked to move out by a landlord, he answered that question

4    "No."  Your Honor, I believe that answer to that question was

5    false in multiple ways.

6    Mr. Neely has been subject -- a defendant in an eviction

7    action at least three times in the state of Illinois.  One was

8    entitled *Senne vs. Neely*; another was entitled *Ring vs. Neely*,

9    and the most recent one was *Piplits vs. Neely*.  And,

10   Your Honor, we have documents to show the Court, if the Court

11   would like to see, from each of those cases.

12   Your Honor, just this morning -- or, yeah, earlier this

13   morning, Your Honor, we were also -- the government was

14   reviewing bankruptcy filings from Mr. Neely's bankruptcies in

15   the state of California, and we located an additional three

16   residential unlawful detainers, also known as eviction actions,

17   in those states.  So, Your Honor, it appears that Mr. Neely has

18   been the subject of an eviction action six times in the past 15

19   years or so.

20   And, Your Honor, the government believes that under -- as

21   a condition of Mr. Neely's pretrial release, Your Honor knows

22   that Mr. Neely was ordered not to violate federal, state, or

23   local law while on release.  Your Honor, I believe that these

24   actions that Mr. Neely has taken with respect to this lease

25   have violated Illinois state law.  Specifically, Illinois state

1  law 720 ILCS 5/17-3, which is a forgery statute.  The elements

2  of that statute are with the intent to defraud a defendant

3  knowingly makes a false document that is capable of defrauding

4  another.  I believe it's clear that Mr. Neely has done that.

5       Your Honor, there's also the Illinois wire fraud statute,

6  which is 720 ILCS 5/17-24 which, Your Honor, is very similar to

7  the federal wire fraud statute.  It requires a defendant to

8  transmit or cause to transmit a writing for the purposes of

9  obtaining money or property under false pretenses; and I

10 believe, Your Honor, it is clear Mr. Neely has done that as

11 well -- or at least there is probable cause to believe

12 Mr. Neely has done so.

13      And so, Your Honor, I believe that under Title 18, United

14 States Code, Section 3148, specifically Subsection (b)(1),

15 there is probable cause to believe that Mr. Neely has committed

16 a state crime while on pretrial supervised release.  And then

17 further to that, Your Honor, if -- because these offenses are

18 felonies -- and I can provide the state citation for that as

19 well -- a rebuttable presumption arises that there's no

20 condition or combination of conditions that will assure that

21 the person will not pose a danger to the safety of any other

22 person or the community.

23      Your Honor, I just want to point out one or two other

24 things.  In Mr. Neely's pretrial services report, he indicated

25 that he has lived at the address 1020 West Oakdale since 2018.

1    Your Honor, that's simply not correct.  Mr. Neely lived at two

2    different addresses prior to that, 1764 North Hoyne, and there

3    was another address on Oakdale, as well, where Mr. Neely

4    resided.

5         So based on everything that the government has

6    proffered -- and, again, Your Honor, we have documents, if the

7    Court would like to see them, on each of these claims which --

8    since they were filed in -- bankruptcy actions in state courts,

9    I believe the Court could take judicial notice of them.  I

10   believe Mr. Neely has committed both forgery and wire fraud

11   offenses under Illinois state law, there's probable cause to

12   believe that he did, and I would ask the Court to revoke his

13   bond on that basis.

14        **THE COURT:**  Any evidence or proffers on behalf of the

15   defense?

16        **MR. YOUNG:**  Judge, just a proffer and, I believe,

17   five exhibits.

18        Judge, if I may approach, these are my exhibits.  These

19   are all things that I have provided to the government regarding

20   a number of issues that arise in this case and will affect

21   Mr. Neely's status on bond at this time.

22        I would proffer Defendant's Exhibits A through F.  If I

23   may approach?

24        **THE COURT:**  Yes.  Show Defendant's Exhibits A through

25   F admitted.

1        (Documents tendered.)

2            **THE COURT:**  Thank you.

3        I believe you said you provided these to the government.

4            **MR. YOUNG:**  That's correct, Judge.

5            **THE COURT:**  Any other evidence or proffers?

6            **MR. YOUNG:**  Judge, proffer.

7            **THE COURT:**  Go ahead.

8            **MR. YOUNG:**  Judge, it hasn't been alleged that

9    Mr. Neely is a flight risk, but I tendered to the Court

10   Defendant's Exhibit A, which is Mr. Neely's expired passport.

11   He's been a Chicago resident now for several years and resides

12   there with his child in Cook County, Illinois.

13       I tendered to the Court Defendant's Exhibit A -- I'm

14   sorry.  Excuse me. -- Exhibit D which is an email from the

15   defendant's divorce lawyer and a court order which I believe

16   indicates and proves that Mr. Neely is the sole provider and

17   caretaker for his son, Kamn, who is 10 years old.  I ask the

18   Court to take that into consideration.  Mr. Neely has no one

19   else to take care of his 10-year-old son other than himself.

20       I also tendered to the Court Defendant's Exhibits B and C,

21   as well as F, which are medical -- which are medical documents

22   indicating that Mr. Neely was, in fact, in the hospital for a

23   couple of days.  He missed the last hearing because he fell,

24   became dizzy, lost consciousness, and was admitted to the

25   hospital.  Those records also indicate that he has serious neck

1   and spine issues and that decompression surgery is indicated.

2   He's got follow-up appointments next week with those -- with

3   two providers to schedule that surgery.

4       I misspoke, I believe it was yesterday on the phone, when

5   I indicated to the Court that this particular situation was an

6   emergency.  The surgery itself would be life threatening and

7   that would be an emergency.  This particular medical incident

8   the defendant was discharged.  He still is subject to dizziness

9   and fainting and is going to follow up with Drs. Gruber -- and

10  that's G-R-U-B-E-R, Dr. Gary Gruber, G-A-R-Y, G-R-U-B-E-R, and

11  Dr. Michael Chioffee, C-H-I-O-F-F-E-E, and those are at

12  Northwestern.  And he's to make arrangements to have that

13  surgery completed -- or scheduled at that time.

14      With regard to Defense Exhibit E, Judge, I enclosed

15  that -- or attached that and make that part of our argument

16  because there was some discussion about Mr. Neely's bankruptcy

17  attorney and the Court was concerned that he was firing

18  attorneys and hiring attorneys in order to delay, perhaps

19  frustrate the criminal process.  These documents shed some

20  light on that.

21      Mr. Neely's emails -- or text messages to his attorney

22  Caroline Smith, S-M-I-T-H, indicate that Mr. Neely's intention

23  was to attempt to pay the landlord.  In fact, he would have

24  been paid had he not filed a "fake eviction."  By that I think

25  he means there's some question under Illinois law about the

1    propriety and the timing of the eviction.

2         This particular attorney wanted to do what they call in

3    Illinois as a nonsuit or dismissal without prejudice, and

4    Mr. Neely had a dispute with her about that concerning the idea

5    that there would be no money that changed hands and that

6    Dr. Shah wouldn't be paid.  So that was the dispute that caused

7    him to release her.

8         And that brings up the idea of Docusign.  These

9    documents -- as the Court can see, a lot of these documents

10   require a Docusign; and the application in question was a

11   Docusign application.  And the testimony from the doctor the

12   day before yesterday -- and his lawsuit, in my view, after

13   reviewing those documents, seems to be pointed more towards the

14   real estate agent than Mr. Neely.

15        I, myself, from time to time get documents in my email, as

16   we all do, and they require a signature; and you find yourself

17   hitting sign, sign, sign not really reviewing the documents.

18        In this particular case, this unscrupulous real estate

19   agent -- or broker was putting these documents together in an

20   effort to close the contract such that Mr. Neely could rent the

21   premises at Grace Street -- or Avenue in Chicago.  So he, in

22   fact, did close and did tender the deposit, which actually went

23   to -- one of the checks went to @properties, which is the real

24   estate agent, and the other check went to Dr. Shah.

25        And Mr. Neely was somewhat late on, I believe it was, the

1   July payment, and that's when the notice came.  And Mr. Neely,

2   through advice of counsel, was instructed not to pay anymore

3   rent, and he didn't.  And then I think the eviction lawsuit was

4   filed sometime in September.

5       I would also indicate and proffer to the Court that

6   Mr. Neely is willing -- is ready, willing, and able and

7   attempting to move out of the Grace Street address and will do

8   so, we're hoping, by the middle of December, return the

9   property to Dr. Shah, and help him to mitigate whatever losses

10  that he has; and his intent is to pay whatever money damages

11  that he owes.

12      The government makes quite a bit about Mr. Neely

13  utilizing -- lawfully utilizing the bankruptcy code.  He has

14  filed those bankruptcies.  As the Court is aware, an individual

15  cannot be a debtor in a Chapter 7 case -- only one time in, I

16  think, it's eight years, and he's got two corporations where he

17  filed Chapter 11s and Chapter 13s.  And I think -- and I would

18  argue that the majority of those were dismissed.  He was not

19  discharged in bankruptcy, and he's never been accused of or

20  charged -- or it's never been alleged that he committed

21  bankruptcy fraud.

22      So with all that said and the idea that Mr. Neely is the

23  sole provider and caretaker for his son, he has some medical

24  conditions he has to deal with and, very importantly, his

25  defense in this case is very document sensitive.  In order to

1  properly defend him, I would need access to a number of

2  documents.  If he were incarcerated or detained prior to trial,

3  I don't know how his attorney, me, would get those documents

4  and Mr. Neely would have an effective attorney arguing for him.

5      As far as conditions, Judge, Mr. Neely is currently on an

6  ankle monitor, the Court has ordered him not to enter into any

7  financial transactions.  So I would suggest if the Court is

8  inclined to allow Mr. Neely to go home today that the --

9  Mr. Neely be confined to his home, period, and that could be

10 monitored through the ankle monitor that he's already on;

11 number two, be restricted from any Internet usage other than

12 communication with me, and any other condition the Court would

13 deem appropriate in this matter we would wholeheartedly agree

14 with and, of course, abide by.

15     A couple of days ago, I'm not exactly sure what day,

16 Dr. Shah, in fact, called Mr. Neely.  I had no part of it.  I

17 was told this by Mr. Neely.  And, apparently, Dr. Shah was very

18 eager to resolve this matter; and Mr. Neely and Dr. Shah had a

19 nice conversation, from what I understand.  Again, wasn't part

20 of it.  Dr. Shah is not an attorney.  He is represented by

21 counsel.  Mr. Neely is, at this point, in between attorneys on

22 the eviction matter.

23     So they spoke.  I didn't hear the conversation, but I

24 believe that matter is going to be resolved.  I have reason to

25 believe that Mr. Neely will have the ability to satisfy

1     those -- the money that he owes Dr. Shah.

2          So the government relies on the lease application and the

3     alleged misstatements -- misrepresentations therein, and I'm

4     not saying Mr. Neely -- that isn't a Docusign signature.  I'm

5     just saying sometimes we hastily -- I have done it myself.  I

6     know this.  You Docusign, Docusign, Docusign.  I believe those

7     agents put those documents together.  I'm not saying he didn't

8     have a duty to look at them and make sure they were correct.

9          But the reason that he let his eviction attorney go is

10    because in her correspondence and court filings and proposed

11    settlement agreements is that the doctor wouldn't have been

12    able to avail himself of any money damages, and Mr. Neely

13    wasn't agreeable to that and also wasn't agreeable to some of

14    her attorney fees that she was charging in that case.

15         So I know there's a lot of curves and a lot of twists in

16    the road here, but I think Mr. Neely, at the end of the day, is

17    not a malicious or intentionally bad man.  He's made some

18    mistakes.  And he's got his son to raise, and he's got nobody

19    else to take care of his son for sure.

20         And the Court can confine him completely to his home.

21    He's good with that.  If he goes to jail, it's going to be a

22    real serious problem here, and I'm not going to -- I'm going to

23    have a hard time getting my documents I need.  His son, I don't

24    know what's going to happen.

25         I'd ask the Court to consider those things and my exhibits

1    and consider modifying the conditions of his bond and we'll

2    move forward towards the pretrial date, which I think is in

3    March.

4              **THE COURT:** Any other proffers or comments before I

5    give the government a chance to rebut?

6              **MR. YOUNG:** No, Your Honor.

7              **THE COURT:** All right. Mr. Sohn, you have the last

8    word. It's your motion.

9              **MR. SOHN:** Yes, Your Honor.

10        I'll start where the defense started. Mr. Neely's

11    passport is expired. It's not impossible for Mr. Neely to get

12    another passport.

13        Defense counsel also mentioned that Mr. Neely is the sole

14    provider and caretaker of his young son. Obviously Mr. Neely

15    has been in the hospital for three days, and I don't think that

16    young son was home alone, Your Honor. So there are other

17    people who I believe are capable of taking care of his son.

18        In the pretrial services report, Your Honor, Mr. Neely

19    reports four adult relatives living in the Chicago area,

20    including his brother, Delandis; his adult son, Steven, who is

21    29 years old; his daughter Zalita; and another child, Jae

22    Neely, who is -- Zalita is 37 and Jae is 27.

23        Your Honor, in addition, Mr. Neely -- I'm not sure if his

24    divorce is finalized or not, but he was also married to a third

25    woman, Diane Neely, with whom he resided several years ago. So

1 there's multiple adults who are responsible who could

2 potentially take care of his son and who have ties to his son;

3 they are not strangers.  And, as I said, Your Honor, there are

4 people -- someone must have taken care of his son between the

5 3rd and the 5th.

6     With respect to the medical documentation, Your Honor, it

7 indicates in -- that Mr. Neely -- one moment, Your Honor.  I'm

8 sorry.

9     I'm not certain which exhibit this is, Your Honor.  It is

10 the exhibit that starts "After-visit summary."  On page 4 of 5

11 it says "Activities/restrictions:  Action as tolerated.

12 Special instructions:  None."  So it does not appear Mr. Neely

13 has any pressing medical need that could not be appropriately

14 considered while in custody.

15     If you look -- if the Court looks at the document that

16 starts "Appointment details," it's a 38-page document, I would

17 point the Court to several things in this.  Starting at

18 page 11, it notes that -- the doctor notes here --

19 Dr. Anna Scalzo notes per orthopedic surgeon less concerned

20 cervical stenosis is cause of syncope and did not require

21 urgent or emergent intervention but follow up with surgeon --

22 spine surgeon to discuss options.

23     I will note also if the Court turns to page 17 of that

24 document it indicates that the patient was discharged home

25 today on the 5th of December and that his daughter picked him

1    up.

2         If Your Honor turns to page 13 of 38 of that document, it

3    appears that Mr. Neely reported to his physician while in the

4    hospital that he had an ankle bracelet in place for a DUI as he

5    was drinking some alcohol while in his car.  Your Honor knows

6    that's not why Mr. Neely has an ankle bracelet.  He has an

7    ankle bracelet under this Court's order.

8         Your Honor, just to address the defense implication that

9    this somehow was not Mr. Neely or Mr. Neely may have signed

10   something without realizing what he was signing, Your Honor has

11   Government's Exhibits 2 and 3.  Those are IDs, a driver's

12   license and a Social Security card, that I would put forth only

13   Mr. Neely had access to.  He must have uploaded those.  There's

14   certainly probable cause to believe that he did.  So it's not

15   just something that Mr. Neely was clicking through, and it's

16   not merely a Docusign.  As Your Honor can see, on the last page

17   of that document, it appears to be a finger signature of some

18   kind.

19        Your Honor, to address the couple other points that

20   defense raised, the government is not suggesting there's

21   anything untoward about using the bankruptcy code.  People do

22   it all the time, that is their legal right.  What the

23   government is suggesting is by using the bankruptcy code and

24   then completing a lease application indicating that he did not,

25   Mr. Neely was clearly making a false statement when answering

1    that question.

2         Just a few more things, Your Honor.  Defense counsel

3    indicated that Mr. Neely believes that he will be able to

4    resolve the financial judgments against him resulting from the

5    current eviction case should that case be resolved.

6         As Your Honor knows, just a few months ago in this Court

7    the defendant told this Court he did not have money to hire an

8    attorney.  Obviously, there have been several months

9    intervening, Your Honor, but there's a -- as Your Honor heard

10   from Dr. Shah yesterday, the judgment here is going to be

11   substantial; the amount owed is not a small amount.  I would

12   ask the Court to consider Mr. Neely's truthfulness in saying to

13   this Court back in June or July that he didn't have funds to

14   hire -- to hire his own attorney.

15        And, Your Honor, just the notion that Mr. Neely should be

16   confined to a home when there's probable cause to believe he

17   entered into a lease for under -- you know, in violation of

18   Illinois criminal law where he is failing to pay $11,500 a

19   month in rent, Your Honor, that's -- that sort of condition

20   is -- it's, to me, not a condition at all almost.  And just,

21   overall, Your Honor, I'd say that there's -- the government has

22   established that there's probable cause to believe that

23   Mr. Neely has committed these offenses of fraud and wire fraud

24   and forgery under Illinois state law.

25        I don't think the Court has heard anything from defense

1  that establishes a rebuttable presumption that Mr. Neely should

2  be detained absent sufficient conditions, and I don't think the

3  Court has heard anything that's sufficient to rebut that.  And,

4  Your Honor, to the extent that it may be difficult to -- for

5  Mr. Neely to speak with his lawyer should he be detained today,

6  Your Honor, that's a consideration in every case.  And other

7  defendants make it work, including white collar defendants,

8  including defendants that I'm personally involved in --

9  including defendants in whose cases I'm personally involved in.

10      Your Honor, I would respectfully submit there's probable

11  cause that Mr. Neely has committed wire fraud and forgery under

12  Illinois state law, that those are felonies, that a rebuttable

13  presumption arises and that that rebuttable presumption has

14  not, in fact, been rebutted; and I would leave it at that,

15  Your Honor.

16          **THE COURT:**  When Mr. Neely was in court at the

17  initial appearance, he indicated he did not have sufficient

18  funds to retain an attorney yet he came up with $21,000 for a

19  real estate transaction.  Now it's represented that he could

20  come up with approximately $69,000 to settle the civil dispute

21  with his landlord.  I do not know what he paid Mr. Young, but

22  he came up with some money to retain a private attorney in this

23  case.  So it appears that at the initial appearance Mr. Neely

24  was less than candid with the Court, and that testimony was

25  under oath.

1     There was a civil case set for December 3rd.  He fired his

2 civil attorney on the eve of the case, succeeded in getting the

3 civil case continued.  The criminal case here, the bond

4 revocation was scheduled for December 4th.  He fired his CJA

5 attorney.  Mr. Young asked to have it continued.  I denied the

6 motion for continuance.  Mr. Neely wound up in the hospital and

7 was unable to appear at the scheduled hearing on the 4th.

8     I have reviewed the hospital records as tendered.  There

9 is nothing in the hospital records that indicates that there is

10 any objective findings as to the reasons for him being in the

11 emergency room.  All of them stem from a subjective complaint

12 of dizziness which caused him to fall.  I believe that the trip

13 to the hospital was an effort to avoid and delay this

14 particular hearing.

15     The government has presented more than probable cause to

16 demonstrate that Mr. Neely committed a felony while on bond

17 given the entire background and the entire conduct of

18 Mr. Neely.  I believe he is trying to game the system.  I

19 believe he thinks he can take advantage of the Court.  He is

20 not taking the charges against him seriously.

21     I will grant the government's motion to revoke his bond.

22 I do not believe that there are any conditions of release that

23 will assure his appearance.  His cooperation with the probation

24 department -- given his record of deception to the Court along

25 the way, he certainly is not someone who the Court can trust to

1  live up to the terms and conditions of his release no matter

2  what modification is made.

3       So show the bond is revoked.  Mr. Neely is remanded to the

4  custody of the marshals instanter.

5            **DEPUTY CLERK:**  All rise.

6  * * *

7       (End of requested transcript.)

8                          CERTIFICATE

9       I, Stacy L. Drohosky, certify that the foregoing is a true

10 and correct transcript from the record of proceedings in the

11 above-entitled matter.

12 Date:  December 18, 2024

13                               S/Stacy L. Drohosky
                                 S/STACY L. DROHOSKY
14                               Court Reporter
                                 U.S. District Court
15

16

17

18

19

20

21

22

23

24

25